STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS

*In re*: **K.W. and C.W.**

**No. 16-0424** (Wood County 13-JA-123 & 14-JA-95)

**FILED**

**November 14, 2016**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Father R.W., by counsel Jessica E. Myers, appeals the Circuit Court of Wood County's March 22, 2016, order terminating his parental rights to five-year-old K.W. and two-year-old C.W.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed its response in support of the circuit court's order. The guardian ad litem ("guardian"), Courtney L. Ahlborn, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental rights without employing less-restrictive dispositional alternatives and in denying his motion for a dispositional improvement period.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In October of 2013, the DHHR filed an abuse and neglect petition against K.W.'s mother.[3] In that petition, the DHHR alleged that K.W.'s mother had threatened to commit suicide

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]We note that West Virginia Code §§ 49-1-1 through 49-11-10 were repealed and recodified during the 2015 Regular Session of the West Virginia Legislature. The new enactment, West Virginia Code §§ 49-1-101 through 49-7-304, has minor stylistic changes and became effective on May 20, 2015. In this memorandum decision, we apply the statutes as they existed during the pendency of the proceedings below. It is important to note, however, that the abuse and neglect statutes underwent minor stylistic revisions and the applicable changes have no impact on the Court's decision herein.

[3]While petitioner is the biological father of both children, K.W. and C.W. have different biological mothers.

1

and had, among other allegations, engaged in domestic violence with various men in her children's presence. The DHHR named petitioner as a respondent to that petition solely because he was K.W.'s father; no allegations were made against him at that time.

In October of 2014, the DHHR amended its 2013 abuse and neglect petition to include allegations against petitioner regarding K.W. and C.W. In the amended petition, the DHHR alleged that petitioner refused to allow the DHHR worker or guardian into his home in October of 2014 while he "screamed and cursed at them" and "grabbed [K.W.] around the waist and threw him in the back of the car." Petitioner then reportedly told the DHHR worker and guardian, "[i]t would be in your best interest to get in you f****** car and get off his [sic] f****** property." The DHHR further alleged that the day after he refused to allow the DHHR worker and the guardian into his home, petitioner committed domestic violence in C.W.'s presence by pushing, hitting, and kicking C.W.'s mother; causing C.W.'s mother to fall onto the child; breaking a closet door, a bedroom door, and a front access door of the home during the incident; refusing to allow C.W.'s mother to leave the home; pushing C.W.'s mother into a riding lawnmower; and attempting to hit C.W.'s mother with a car as she escaped the home. According to the DHHR, C.W.'s mother obtained a protective order against petitioner, and petitioner was later arrested for criminal charges, including child neglect creating the risk of injury, arising from the incident.

In December of 2014, the circuit court held an adjudicatory hearing. At that hearing, petitioner voluntarily stipulated to the allegations in the petition. The circuit court accepted petitioner's stipulation and adjudged him to be an abusing parent. Thereafter, the circuit court granted petitioner's motion for a post-adjudicatory improvement period. The terms and conditions of that improvement period included the following services: visits with K.W. (petitioner was not granted visits with C.W. due to the previously imposed protective order); parenting and adult life skills classes; anger management classes; individualized therapy; and completion of evaluations by a licensed psychologist to assess petitioner's fitness to parent, general psychological state, and concerns about domestic violence and substance abuse. Following his completion of the psychological evaluations, petitioner was directed to enter a thirty-two week domestic violence intervention program, which he could not begin until his criminal charges were resolved.

In September of 2015, petitioner pled guilty to the charge of child neglect creating the risk of injury, and the remaining charges were dropped. Petitioner was sentenced to one to five years in prison. He began serving his prison term on December 8, 2015.[4]

In February of 2016, the circuit court held a dispositional hearing. At that hearing, the circuit court heard testimony from petitioner, the DHHR worker, and C.W.'s mother. Petitioner testified that while he committed acts of domestic violence on at least two occasions, he could not remember many of the details of those acts. Petitioner also claimed to have participated in many of the services in his improvement period, including parenting and adult life skills classes, anger management classes, and individualized therapy. Petitioner admitted that he stopped

---

[4]The record reveals that petitioner was given credit for time served on his prison term of eight days, which made his effective commitment date November 30, 2015.

attending these services in November of 2015, prior to his incarceration in December of 2015. Petitioner also admitted that he had not completed the domestic violence intervention program, but he argued that he was prevented from doing so because the program would not accept him until his criminal charges were disposed.

In her testimony at the dispositional hearing, the DHHR worker stated that petitioner had initially denied the allegations of domestic violence but later altered his version of events to provide an admission to limited acts of domestic violence against C.W. and C.W.'s mother. The DHHR worker explained that petitioner had not completed individualized therapy, anger management classes, and the domestic violence intervention program, which the DHHR worker considered the most imperative part in his case plan. The DHHR worker further explained that there was a five-month period when petitioner did not visit with C.W., and petitioner had no bond with that child. In her testimony, C.W.'s mother stated that petitioner had provided some but not all of the details of his violence. She explained that he hit and kicked her multiple times in October of 2015, whereas petitioner only admitted to hitting her once on that occasion. She also testified that petitioner pushed her violently onto a bed while she held C.W. in her arms, an act petitioner repeatedly claimed not to remember. At the conclusion of the hearing, the circuit court requested proposed findings of fact and conclusions of law from the parties.

The circuit court entered its order on March 22, 2016, terminating petitioner's parental rights to the children. In that order, the circuit court found that petitioner failed to complete the services offered to him, including the domestic violence intervention program, during his improvement period. The circuit court further found that petitioner admitted to certain acts of domestic violence but continued to "minimize his role" in committing domestic violence against the children and C.W.'s mother. The circuit court also noted that petitioner's incarceration for one to five years rendered further services "very difficult" for him to complete. The circuit court concluded that petitioner "seriously injured the children emotionally and that the degree of family stress and the potential for further abuse and neglect" precluded further mitigation of his underlying problems. Based on these findings and conclusions, the circuit court ruled that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the near future and the children's welfare required termination of his parental rights. It is from that termination order that petitioner now appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Further, our case law is clear that "in the context of abuse and neglect proceedings, the circuit court is the entity charged with weighing the credibility of witnesses and rendering findings of fact." *In re Emily*, 208 W.Va. 325, 339, 540 S.E.2d 542, 556 (2000) (citing Syl. Pt. 1, in part, *In re Travis W.*, 206 W.Va. 478, 525 S.E.2d 669 (1999)); se*e also Michael D.C. v. Wanda L.C.*, 201 W.Va. 381, 388, 497 S.E.2d 531, 538 (1997) (stating that "[a] reviewing court cannot assess witness credibility through a record. The trier of fact is uniquely situated to make such determinations and this Court is not in a position to, and will not, second guess such determinations.").

On appeal, petitioner first argues that the circuit court erred in terminating his parental rights to the children without employing a less-restrictive dispositional alternative. Petitioner correctly cites the first phrase of Syllabus Point 1 of *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980): "As a general rule[,] the least[-]restrictive alternative regarding parental rights to custody of a child under W[est] V[irginia] Code [§] 49-6-5 (1977) will be employed[.]" Petitioner fails, however, to cite the remainder of that holding. The entirety of that syllabus point reads as follows:

> As a general rule[,] the least[-]restrictive alternative regarding parental rights to custody of a child under W[est] V[irginia] Code [§] 49-6-5 (1977) will be employed; however, courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements.

*In re R.J.M.*, 164 W.Va. at 496, 266 S.E.2d at 114, syl. pt. 1. Further, petitioner fails to acknowledge that West Virginia Code § 49-4-604(b)(6) requires the termination of parental rights when circuit courts find that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. We have also held that "[t]ermination . . . may be employed without the use of intervening[,] less[-]restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. Pt. 7, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). West Virginia Code § 49-4-604(c)(5) provides that "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected" means that the parent has demonstrated an inadequate capacity to solve the problems of abuse or neglect. Such a condition exists when

> [t]he abusing parent or parents have repeatedly or seriously injured the child physically or emotionally, or have sexually abused or sexually exploited the child, and the degree of family stress and the potential for further abuse and neglect are so great as to preclude the use of resources to mitigate or resolve family problems

4

or assist the abusing parent or parents in fulfilling their responsibilities to the child[.]

*Id.*

In the case sub judice, it is clear that there was no reasonable likelihood that petitioner could have substantially corrected the conditions of abuse or neglect in the near future. Notwithstanding the serious emotional injury petitioner inflicted upon his children by his acts of domestic violence, petitioner failed to complete the services offered to him for the purpose of correcting the conditions of abuse and neglect. Petitioner had almost an entire year to demonstrate his improvement and satisfy the terms of his post-adjudicatory improvement period. Notably, one of the services petitioner failed to complete was domestic violence intervention education, which was central to the abuse and neglect at issue herein. While petitioner argues that he was prevented from completing the domestic violence intervention program due to his criminal charges, he cites no authority for the proposition that criminal charges excuse a parent from the requirements of an improvement period in abuse and neglect proceedings. Further, it is abundantly clear from the record that, at the time of disposition, petitioner was physically unable to continue many of his services due to his continued incarceration for one to five years. *See In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (regarding circuit court's consideration of incarceration as factor at disposition). Based on the circumstances of this case, we find no error in the circuit court's decision to terminate petitioner's parental rights without employing less-restrictive dispositional alternatives.

Petitioner's second ground for appeal is that the circuit court erred in denying his motion for a dispositional improvement period. West Virginia Code § 49-4-610(3)(A)-(D) provides that a circuit court may grant an improvement period as a disposition when:

(A) The respondent moves in writing for the improvement period;

(B) The respondent demonstrates, by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period and the court further makes a finding, on the record, of the terms of the improvement period;

. . . .

(D) . . . [T]he respondent demonstrates that since the initial improvement period, the respondent has experienced a substantial change in circumstances. Further, the respondent shall demonstrate that due to that change in circumstances, the respondent is likely to fully participate in the improvement period[.]

Further, we have often noted that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *In re: M.M.*, 236 W.Va. 108, 778 S.E.2d 338 (2015) (stating that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). Moreover, we have held that a parent's "entitlement to

an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period . . . .'" *In re: Charity H*., 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, it is undisputed that petitioner received an initial, post-adjudicatory improvement period prior to making his request for a dispositional improvement period. As such, petitioner was required to demonstrate that, since his initial improvement period, he had experienced a substantial change in circumstances and, due to that change in circumstances, that he was likely to fully participate in the dispositional improvement period. We find no support in the record on appeal for such a conclusion. Petitioner again relies upon the argument that his criminal charges and incarceration prevented him from completing services under his initial improvement period. However, petitioner fails to cite any authority to support the conclusion that when a parent is prevented from completing services due to criminal charges/conduct, that the parent is entitled to a second improvement period. We decline to make such a holding under the facts of this case. Based on the record before this Court, we find that petitioner did not satisfy the terms of his initial improvement period and failed to establish a substantial change in circumstances such that a dispositional improvement period was required. Therefore, we find no abuse of discretion in the circuit court's termination order.

For the foregoing reasons, we hereby affirm the circuit court's March 22, 2016, order.

Affirmed.

**ISSUED**: November 14, 2016

**CONCURRED IN BY**:

Chief Justice Menis E. Ketchum
Justice Robin Jean Davis
Justice Brent D. Benjamin
Justice Margaret L. Workman
Justice Allen H. Loughry II